T. H. B. Patterson, Appellant, *v.* W. G. Park et al.

166      25|
f 36 SC  285|

166      25
f38SC   333 .

*Landlord and tenant—Lease—Rent—Repairs—Evidence.*

Where a lease provides that all repairs should be made by the tenant and that if the tenant continues to occupy the premises after the expiration of the term, without entering into any other agreement, the terms of the original lease should be continued for such further time as the tenant might occupy the premises, and it appears that the tenant continued to occupy the premises after the expiration of the time, without any other agreement, evidence in an action for rent is immaterial that, before the expiration of the original term, complaints were made by the tenant in regard to the condition of the premises, that repairs were needed and demanded, and that negotiations for a new lease were pending between the parties.

Argued Nov. 7, 1894. Appeal, No. 267, Oct. T., 1894, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., March T., 1893, No. 513, on verdict for defendants. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Replevin for goods distrained for rent. Before STOWE, P. J.

At the trial it appeared that plaintiff leased certain premises for one year from April 1, 1891. At the end of the year he held over and occupied the premises for another year. The rent for the first year was paid. The rent for the second year was not paid, and for this defendant distrained on certain goods belonging to plaintiff. Plaintiff replevied the goods. It was provided in the lease that all repairs should be made by the tenant.

John P. Goettman, defendant's witness, was asked on cross-examination: Q. Was there any question towards the close of the year, before the first of April, 1892, with regard to the condition of the premises, their being in an untenantable condition, and any demand and any arrangements about repairing them? Objected to as incompetent and irrelevant. Objection sustained and bill sealed for plaintiff. [1]

John P. Goettman, cross-examined by Mr. Patterson: Q. From the time that you first demanded the new lease up until the time you wrote the letter of Jan. 25, 1893, weren't

there constant negotiations with regard to putting those offices in repair, to make them tenantable, and wasn't that the difference between us, with regard to the condition of the offices? Objected to as incompetent and irrelevant. Objection sustained and bill sealed for plaintiff. [2]

By Mr. Patterson: I offer in evidence, in connection with the cross-examination of this witness, letters identified by him, to show that there was no continuance of the old lease, that there was a negotiation with regard to putting the offices in a tenantable condition and repair, and that the new lease was not signed for that reason; that the negotiations continued until January, 1893. The letter of Jan. 25, 1893, shows that up to that time they were claiming they would fix the offices if I would execute this new lease. Objected to as incompetent and irrelevant. Objection sustained and bill sealed for plaintiff. [3]

Plaintiff offered the same letters and proposed to offer testimony in connection therewith to prove, by plaintiff and other witnesses, that the offices, the premises in question here, were in such an untenantable and ruinous condition before the 1st day of April, 1892, that plaintiff refused to continue in occupancy of them under the lease unless the offices were put in a tenantable condition; and that defendants, through their agents, promised to do so, and also demanded that a new lease be executed upon entirely new terms and at an increased rate of rent, which plaintiff agreed he would execute, provided the offices were put in a tenantable condition before he did so. And that the negotiations with regard to the putting of the offices in a tenantable condition and with regard to the execution of the lease continued from time to time between the plaintiff and the defendants and their agent in charge of this matter, up until the landlord's warrant was issued and the levy made upon which this proceeding is based. This for the purpose of showing that during the year from the 1st of April, 1892, up until the 1st of April, 1893, there was no existing lease between the plaintiff and defendants, and that therefore the landlord's warrant issued and the levy made were illegal. Objected to as incompetent and irrelevant. Objection sustained and bill sealed. [4]

One of these letters, written by defendants' agents, stated

that "we cannot consider the house rented to you until the (new) lease is properly executed and returned." Another letter stated that unless plaintiff returned the lease signed they would "recognize him as a tenant under the old lease."

The court charged as follows:

" [Under the evidence in this case the defendants are entitled to your verdict and you should certify in that the amount of rent due at $175. There is no controversy as to the amount of rent due under this lease.] [5]

" [There is nothing shown in this case at all that would relieve the plaintiff from paying the amount of rent due under the first lease. Whenever a man has a lease for a property for a certain time, and undertakes to hold over afterwards, then it is a renewal of the lease.] [6]

" [The defence set up, which I need not particularly refer to, is simply that the landlord wanted more rent and the tenant wouldn't give it until there was some improvement made. Well, he had perfect liberty to go away if he did not like to stay, but if he staid he staid under the terms of the original lease, and he was therefore bound to pay the rent.]" [7]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–4) rulings; (5–7) instructions; quoting instructions and bills of exception; (8) that the charge as a whole was misleading.

*T. H. B. Patterson*, p. p., for appellant, cited: Taylor's L. & T. §§ 64, 524; Jackson & Gross, L. & T. §§ 356, 211; Wood's L. & T. §§ 6, 20, 21; Hollingsworth v. Stennett, 2 Esp. 717; Diller v. Roberts, 13 S. & R. 64; MacGregor v. Rawle, 57 Pa. 186; Oil Refining Co. v. Bush, 88 Pa. 341; Wilgus v. Whitehead, 89 Pa. 131; Milling v. Becker, 96 Pa. 185; Hollis v. Burns, 100 Pa. 209; Grove v. Barclay, 106 Pa. 164.

·*R. B. Petty*, for appellee, cited: Prescott v. Otterstatter, 85 Pa. 534; Jackson & Gross, L. & T. § 1060.

PER CURIAM, Jan. 7, 1895:

As presented in plaintiff's paper-book, the testimony and exhibits are so incomplete that it is impossible to properly

understand the facts of this case without referring to the record, and copy of the original lease, etc., printed by defendants. With the aid of these, it appears that plaintiff in this action of replevin leased from the then owner the premises described in the lease, in the condition they then were, for the term of one year from April 1, 1891, for the annual rent of $175 payable quarterly in advance. It was provided in the lease that all repairs should be made by the tenant; and also that, if he should " continue to occupy the said tenement after the expiration of the term, . . . . without entering into any other or further agreement, then the amount of rent, terms of payment and other covenants and agreements . . . . shall be continued as applicable to such further terms as the said parties may continue to occupy the relation of landlord and tenant."

The rent for the year specified in the lease appears to have been paid; but at the expiration of the term, the lessee held over and continued to occupy the demised premises, " without entering into any other or further agreement," until four quarterly payments of rent became due and in arrear. Thereupon a landlord's warrant was issued, and by virtue thereof the goods, afterwards replevied and delivered to the plaintiff, were distrained.

Plaintiff's pleas to the avowry, etc., were that he " did not hold the premises as tenant of the defendants, as alleged, and that no part of the said supposed rent . . . . was in arrear," etc. To which was added, by leave of court, " that the premises were in an untenantable condition."

There was no controversy as to the fact that plaintiff continued to occupy the demised premises, from and after expiration of the term named in the original lease, until after the first of the following January, when, according to the provision above quoted, another year's rent had become due. It was not even alleged that any part of this rent was paid; nor was there any proof, or offer to prove, that a new lease of the premises was ever executed, or finally agreed upon. On the contrary, it appeared that a new lease was prepared and submitted to plaintiff for execution; but he refused to sign it unless the landlord would first comply with his demand and make certain repairs. In short, it clearly appeared that plaintiff held over, and continued to occupy the premises until the year's rent dis-

trained for became due and in arrear according to the provisions of the lease for preceding year.

There is no merit in either of the specifications relating to the rejected offers to prove that complaints were made in regard to the condition of the premises; that repairs were needed and demanded; that negotiations for a new lease were pending between the parties, etc. Without being followed by proof of change in terms of the lease, these and other matters relied on by plaintiff were irrelevant. There was no proof, or offer to prove, that a new lease was executed or even finally agreed upon.

In view of the undisputed facts, as to plaintiff's holding over without any change of terms, and in the absence of any evidence tending to prove that he had any valid defence to payment of the year's rent in arrear, or any part thereof, there was no error in charging as complained of in the last four specifications.

Judgment affirmed.